UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHWEST MISSISSIPPI REGIONAL
MEDICAL CENTER, ET AL.                                                              PLAINTIFFS

V.                                                          CIVIL ACTION NO. 3:08cv263 DPJ-JCS

MICHAEL O. LEAVITT, ET AL.                                                         DEFENDANTS

ORDER

This declaratory judgment action is before the Court on Plaintiffs Southwest Mississippi Regional Medical Center, Thibodaux Regional Medical Center, George County Hospital, Grenada Lake Medical Center, and Memorial Hospital at Gulfport's motion for summary judgment [15] and Defendants Michael O. Leavitt and Kerry N. Weems's cross-motion for summary judgment [18]. The Court, having considered the parties' memoranda and applicable authorities, finds that Defendants' motion is due to be granted. Plaintiffs' motion is denied.

**I.     Facts and Procedural History**

This action concerns the rates at which hospitals were reimbursed by Medicare for outpatient surgical, radiological, and other diagnostic procedures in 1999 and 2000. The Plaintiffs, a group of hospitals in Mississippi and Louisiana, contend that Defendants Leavitt and Weems[1] erroneously interpreted federal law when they applied a "blend rate" rather than the "reasonable cost" rate during the relevant period. In April 2008, Plaintiffs filed this action seeking declaratory and injunctive relief. A brief history of Medicare reimbursement practices is necessary to understand the current posture of the case.

---

[1] Defendant Leavitt is the Secretary of the United States Department of Health and Human Services. Defendant Weems is the Administrator of the Centers for Medicare and Medicaid Services.

Initially, all inpatient and outpatient services were reimbursed by Medicare at the "reasonable cost" rate, which calculated the reimbursement based on the hospital's cost in providing the services. *See County of Los Angeles v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999). "Experience proved, however, that this system bred 'little incentive for hospitals to keep costs down' because '[t]he more they spent, the more they were reimbursed.'" *Id*. (citing *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 974 (D.C. Cir. 1991)).

In an effort to "stem [Medicare]'s escalating costs and perceived inefficiency," Congress passed the Social Security Amendments of 1983, which fundamentally overhauled the Medicare reimbursement methodology. *Id.* (citing Pub. L. No. 98-21, § 601, 97 Stat 149). In particular, Congress created a Prospective Payment System (PPS) for *inpatient* services, which reimbursed hospitals based on a set price for each service. *See* 42 U.S.C. § 1395ww. Congress signaled a move toward an *outpatient* PPS in the late 1980's with the creation of the "blend rate," a hybrid between reasonable cost reimbursement and a PPS, for outpatient surgical, radiological, and other diagnostic procedures (the procedures at issue in this case). Pub. L. No. 100-203, 101 Stat 1330; Pub. L. No. 99-509, 100 Stat. 1874. Thus, as of 1988, Congress had phased out the reasonable cost method for the subject procedures.

In the Balanced Budget Act of 1997, Congress announced that a PPS for outpatient services would go into effect on January 1, 1999. *See* Pub. L. No. 105-33, 111 Stat. 445. The statute provided that reimbursement for "covered OPD[2] services . . . furnished during a year beginning with 1999" would be determined by a PPS established by the Secretary. *Id.* (codified

---

[2] Outpatient department is abbreviated by Congress as "OPD" throughout the statutes referenced in the opinion.

2

at 42 U.S.C. § 1395l(t)). Conforming amendments placed throughout § 1395l phased out both the blend and reasonable cost rates for outpatient services as of January 1, 1999, the date the PPS would take effect. *Id.* at 449 (codified at § 1395l(i)(3), (a)(2)(B)). However, the Department of Health and Human Services (HHS) postponed designating covered services under an outpatient PPS while it addressed the feared "Y2K" computer shutdown. As a result, the outpatient PPS did not take effect until August 2000.

Concluding that Congress did not anticipate a delay in implementing the PPS, Defendants continued to apply the blend rate to the subject outpatient services rendered between January 1, 1999 and the August 1, 2000 launch of the PPS. *See* 42 C.F.R. §§ 413.118, 413.122; 65 Fed. Reg. 18489-90 (April 7, 2000). Plaintiffs contend that Defendants should have used the reasonable cost rate during this period, since the blend rate expired on January 1, 1999. Accordingly, the issue before the Court is whether Defendants exceeded their authority in applying the blend rate to the subject services rendered between the scheduled start of the PPS and its actual implementation. The parties have filed cross-motions for summary judgment, and the case is now ripe for decision.

## II.     Analysis

### A.     Standard of Review

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of USPS*, No. 07-10426, 2008 WL 64673, at *3 (5th Cir. Jan. 7, 2008) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the present case, there are no material fact issues precluding judgment as a matter of law. The Court therefore turns to the rules for reviewing an agency decision.

The United States Supreme Court has established a two-step test for determining whether an agency's interpretation of a statute is valid. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). First, the Court looks to "whether Congress has spoken to the *precise question at issue*." *Id.* at 842 (emphasis added). If Congress has specifically addressed the issue, the court's inquiry ends. *Id.*; *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 393 (5th Cir. 2008). However, if the statute is ambiguous or silent, the court must defer to any "permissible construction of the statute by the agency." *Chevron*, 467 U.S. at 843. Under the second step, the Court may reverse the agency's decision only if it is "arbitrary, capricious, or

manifestly contrary to the statute." *Med. Ctr.*, 536 F.3d at 393. "If the decision is based on a reasonable interpretation of the statute, we defer to the agency's construction." *Tex. Coalition of Cities for Utility Issues v. F.C.C.*, 324 F.3d 802, 807 (5th Cir. 2003) (citing *Chevron*, 467 U.S. at 844) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

    B.    <u>The Parties' Cross-Motions for Summary Judgment</u>

Plaintiffs argue that the relevant statutes clearly and unambiguously preclude Defendants from delaying implementation of the PPS, that the blend rate expired January 1, 1999 and that Defendants were therefore obligated to apply the reasonable cost rate between January 1, 1999 and the implementation date of the PPS for the subject OPD services. Defendants contend that the reasonable cost rate had the same sunset date as the blend rate, that Congress failed to address the gap that resulted between the sunset date and the eventual designation of a PPS for outpatient services, and that its interpretation of the statute and ultimate decision to continue using the blend rate during the interim period were neither arbitrary nor capricious.

    1.    *Statutory Language*

Congress officially authorized the implementation of a PPS for outpatient services in the Balanced Budget Act of 1997 (BBA):

> With respect to *covered* OPD services (as defined in subparagraph (B)) furnished during a year beginning with 1999, the amount of payment under this part shall be determined under a prospective payment system established by the Secretary in accordance with this subsection.

Pub. L. No. 105-33, 111 Stat. 449 (codified at 42 U.S.C. § 1395l(t)) (emphasis added). The statute defines "covered services" as "hospital outpatient services designated by the Secretary." 42 U.S.C. § 1395l(t)(1)(B)(i). Conforming amendments inserted a January 1, 1999 sunset date

5

into the provisions for outpatient surgical procedures (§ 1395l(i)(3)(A)), outpatient radiological and diagnostic procedures (§ 1395l(n)(1)(A)), and other outpatient services to which the reasonable cost rate still applied (§ 1395l(a)(2)(B)).  *See id.* at 449-450.  Thus, beginning January 1999, Congress intended that the outpatient PPS would be the primary method for reimbursement of covered outpatient services, including the subject outpatient surgical, radiological, and diagnostic procedures.  *See* H. Conf. Rep. No. 105-217, at 783-85 (1997).

It seems clear that Congress intended for the sunset of the blend and reasonable cost rates to coincide with implementation of the PPS on January 1, 1999.  Congress did not, however, determine the rate applicable in the event the Secretary missed the January 1, 1999 implementation date.  According to Defendants, the applicable rate during this gap is ambiguous under the statue and represents the "precise question at issue."  *Chevron*, 467 U.S. at 842.

This same issue arose in *Caritas Medical Center v. Johnson*, when a group of hospitals challenged the Agency's application of the blend rate during the subject gap.  --- F. Supp. 2d ---, 2009 WL 780435, at *7 (D.D.C. Mar. 26, 2009).  The court found that the "plain text of the BBA is silent as to what payment method would apply from January 1, 1999 through July 31, 2000." *Id.* (upholding HHS's application of the blend rate to outpatient services provided during the gap period).  The only other federal decision on this issue also found ambiguity due to Congress's failure to address the applicable rate during the gap.  *United Am. Ins. Co. v. Thompson*, No. 99-2493 (RWR), at 5 (D.D.C. July 31, 2002).  This Court agrees.  Because 42 U.S.C. § 1395l is silent as to the applicable reimbursement rate for outpatient services performed after January 1, 1999 but before the Secretary implemented the PPS and designated covered outpatient services,

the Court proceeds to the second *Chevron* step.[3]

    2.    *Defendants' Construction of the Statute*

Under *Chevron*'s second step, the Court must determine whether Defendants' decision to apply the blend rate to outpatient services rendered between January 1, 1999 and July 31, 2000 was "based on a permissible construction of the statute." *Romero-Rodriguez v. Gonzales*, 488 F.3d 672, 676 (5th Cir. 2007) (citation omitted). Because the blend rate expired January 1, 1999, Plaintiffs contend that Defendants acted arbitrarily and capriciously in failing to apply the reasonable cost rate. This argument fails for several reasons.

First, the sunset provisions were merely conforming amendments demonstrating Congress's intent to discontinue the blend rate when the PPS became effective. *See Springdale Mem'l Hosp. Ass'n v. Bowen*, 812 F.2d 1377, 1386 (8th Cir. 1987) (noting that Congress would not rescind long-standing Medicare standards "under the cloak of a 'conforming amendment'"). Second, Plaintiffs neglect to mention that the conforming amendments also applied the January 1999 sunset date to the reasonable cost rate, which was still employed for outpatient services not at issue in this case. *See* 42 U.S.C. § 1395l(a)(2)(B). In other words, the BBA discontinued the reasonable cost rate as to the remaining services for which that method was still employed. More significantly, Congress demonstrated its intent on this issue in the 1980's when it replaced the reasonable cost rate for the subject outpatient procedures with the blend rate. *See* Pub. L. No. 100-203, 101 Stat 1330; Pub. L. No. 99-509, 100 Stat. 1874. It is illogical to conclude that

---

[3] Plaintiffs cite authority focusing primarily on Defendants' delay in implementing the PPS. This authority is neither binding nor persuasive. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 157 (2003) ("[T]he failure to act on schedule merely raises the real question, which is what the consequences of tardiness should be.").

Congress intended to achieve the cost savings goals of the BBA by reviving a reimbursement method it expressly abandoned a decade earlier in an effort to reduce costs. *See County of Los Angeles*, 192 F.3d at 1008.

The Court finds that Defendants' interpretation of the statute was permissible. *See Caritas*, 2009 WL 780435, at *7. From its inception, the blend rate was intended to be a temporary improvement over the reasonable cost rate until implementation of an outpatient PPS. 52 Fed. Reg. 36,767 (Oct. 1, 1987) (noting that the blend rates would change gradually "until a prospective payment system is implemented"). The 1997 amendments make clear that Congress intended the outpatient PPS to seamlessly replace the previous methods for calculating reimbursement payments. *See* 42 U.S.C. § 1395l; *Caritas*, 2009 WL 780435, at *7. Accordingly, Defendants' decision to continue using the blend rate was a permissible construction of the statute.[4] *See Chevron*, 467 U.S. at 843 (noting that an administrative agency's role requires "making . . . rules to fill any gap left, implicitly or explicitly, by Congress"). Defendants' cross-motion for summary judgment is granted.[5]

## III. Conclusion

For the reasons stated herein, the Court finds that Defendants' cross-motion for summary judgment is granted. Plaintiffs' motion is denied.

---

[4] Defendants' decision is especially reasonable considering the alternatives of either reverting to a methodology abandoned over a decade earlier or providing no reimbursements at all.

[5] In the complaint, Plaintiffs contend that, in the event the Court finds the statute is silent with respect to the gap period, they are entitled to equitable relief in the form of reimbursement at the reasonable cost rate. Plaintiff's motion for summary judgment and subsequent response do not address this claim for relief. Even if Plaintiffs still seek this relief, the Court finds that they were adequately compensated for their services at the blend rate and have not shown just cause for granting equitable relief.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 15th day of April, 2009.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE